CRH:EHS/ANR
F. #2020R01043

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – –X

UNITED STATES OF AMERICA

No. 20-CR-547 (PKC)

- against -

DIEUVERSON CAILLE,

Defendant.

– – – – – – – – – – – – – – – – –X


THE GOVERNMENT'S MEMORANDUM OF LAW IN SUPPORT OF THE
GOVERNMENT'S MOTIONS IN LIMINE


BREON PEACE
UNITED STATES ATTORNEY
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


Ellen H. Sise
Antoinette N. Rangel
Assistant U.S. Attorneys
      (Of Counsel)

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in support of its motions in limine in advance of the jury trial in this matter. The defendant, Dieuverson Caille, is charged with conspiracy to commit carjacking, three counts of carjacking, and three counts of knowingly and intentionally using and brandishing a firearm during and in relation to those carjackings. The government requests that the Court:

1) preclude evidence or argument that (i) witness identifications of the defendant were improper, or (ii) the defendant's statements made while being transported from Albany to the Eastern District of New York ("E.D.N.Y.") were improperly elicited;

2) preclude evidence regarding any motive for investigating and arresting the defendant or that the defendant was selectively prosecuted;

3) preclude evidence or argument regarding any consequences the defendant may face upon conviction;

4) preclude any hearsay statements made by the defendant if offered by the defendant;

5) admit evidence of the defendant's flight from law enforcement authorities as evidence of consciousness of guilt;

6) admit evidence of the defendant's address in his prior arrest records—linking him to the August 28, 2020 carjacking (Count Two);

7) preclude "alternative perpetrator" argument unless supported by evidence establishing a sufficient nexus to the charged crimes;

8) admit evidence of a September 3, 2020 carjacking that the defendant committed with co-defendant Moses Fall during the conspiracy;

9) should the defendant argue that the June 20, 2021 Porsche carjacking (Counts Six and Seven) involved someone else's fingerprints, permit the admission of evidence that the fingerprints are a match to a person who was ████████████████████████ ████████████████████; and

10) if the defendant testifies, permit cross examination on his criminal history.

For the reasons set forth herein, the government's motions in limine should be granted.

<u>BACKGROUND</u>

The defendant is charged in a seven-count superseding indictment with carjacking conspiracy (in violation of Title 18, United States Code, Section 371), three counts of carjacking (in violation of Title 18, United States Code, Section 2119), and three counts of using a firearm in furtherance of carjacking (in violation of Title 18, United States Code, Section 924(c)(1)(A)(i)). The government expects to establish the following facts at trial:[1]

On or about August 28, 2020, Caille, together with two others, including co-defendant Moses Fall, drove to the vicinity of 572 East 48th Street in Brooklyn, New York. Caille, Fall, and an unindicted co-conspirator exited their vehicle, and approached the victim, John Doe #1, who was seated inside an Infiniti G-37 (the "Infiniti"). Caille, Fall, and an unindicted co-conspirator, demanded at gunpoint that John Doe #1 get out of the driver's seat of the Infiniti and into a rear passenger seat of the Infiniti, which the victim did. Caille, Fall, and an unindicted co-conspirator got into the driver's seat, front passenger seat, and rear passenger seat of the Infiniti and demanded that John Doe #1 accompany them to a bank to force him to withdraw money from his bank account, but he managed to escape before withdrawing money.

On or about November 15, 2020, Caille approached a victim, John Doe #2, who was seated inside of a BMW 528 (the "BMW"), in the vicinity of Avenue M and East 45th Street in Brooklyn, New York.[2] Caille demanded, at gunpoint, that John Doe #2 exit the BMW, which he did. According to John Doe #2, Caille told him "Give me your phone and keys do not look

---

[1] The proffer of facts set forth herein is not a complete statement of all facts and evidence of which the government is aware or will seek to introduce at trial.

[2] On or about September 3, 2020, Caille participated in another carjacking with co-defendant Fall. That carjacking is the subject of one of the government's motions, and is discussed further below.

back, I'll shoot you."  On or about November 15, 2020, Caille got into the driver's seat of the BMW and sped away.  John Doe #2 later identified Caille in a photo array shown to him by law enforcement officers.  ██████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████  DNA samples of swabs taken from the steering wheel and gearshift of the BMW, as well as from an Apple iPhone found inside the BMW, all match to DNA obtained from the defendant.

On or about June 20, 2021, Caille, together with others, approached a victim, John Doe #3, who was seated inside of a Porsche (the "Porsche"), in the vicinity of the northeast corner of Sheffield Avenue and Stanley Avenue in Brooklyn, New York.  Caille, together with others, demanded, at gunpoint, that John Doe #3 exit the Porsche, which he did.  Caille got into the Porsche and drove away.  A DNA sample taken from the steering wheel of the Porsche matches the defendant's DNA.  The defendant's fingerprint was also found on the frame exterior of the Porsche.

On or about December 2, 2020, a few weeks after the second carjacking, Caille and two co-defendants were charged in an indictment with carjacking conspiracy and related crimes by a grand jury in the Eastern District of New York.  See ECF No. 7.  On or about July 27, 2021, the defendant was arrested by local law enforcement in Albany, New York for criminal trespassing

and providing a false name.  The defendant was arraigned in the Northern District of New York ("N.D.N.Y") on or about July 29, 2021, and ordered remanded and removed to the E.D.N.Y. because of his pending federal case.  During his transport to E.D.N.Y., Caille, made several spontaneous statements to law enforcement (the "Transporting Agents") that he knew he was a fugitive.  In addition to those statements, Caille asked whether it was true that no one could be brought back (removed) from Las Vegas because he was told that if he went there, he could not be brought back to E.D.N.Y.

ARGUMENT

I.   <u>The Defendant Should Be Precluded from Questioning, Arguing, or Asserting that the Witness Identifications Were Improper or that the Defendant's Statements Were Improperly Elicited</u>

     A.   <u>Applicable Law</u>

Evidence is only admissible at trial if it is relevant, meaning that it tends to make a fact more or less probable, and that fact is of consequence to the action.  <u>See</u> Fed. R. Evid. 401, 402.  The Court may exclude evidence whose probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or because it is cumulative.  Fed R. Evid. 403.  Evidence and argument intended to promote jury nullification—that the jury should render a verdict not in accordance with the law—is improper and should be excluded.  <u>See</u> <u>In re United States</u>, 945 F.3d 616, 620 (2d Cir. 2019) (granting writ of mandamus and directing district court to deny defense counsel's request for leave to argue nullification).  "Evidence admitted solely to encourage nullification is by definition irrelevant, and thus inadmissible, regardless of what other evidence might be introduced at trial."  <u>Id.</u> at 630.  A nullification argument "subverts the jury's solemn duty to 'take the law from the court, and apply that law to the facts of the case as they find them to be from the evidence,'" and therefore "[d]istrict courts have a duty to forestall or prevent such conduct."  <u>Id.</u> at 627.

4

B.      Discussion

The Court previously denied the defendant's motion to suppress the two witness identifications (see Dec. 5, 2022 Transcript at 28:15-30:1) and motion to suppress post-arrest statements (id. at 33:19-21.).  Accordingly, the defendant should be precluded from introducing evidence or argument that the identification procedures were unduly suggestive or otherwise improper or that the post-arrest statements were improperly elicited.  The defendant's claim that the identification procedures were improper or that the Transporting Agents did something wrong would be an impermissible attempt to relitigate an issue already decided by this Court, and which otherwise has no bearing on the defendant's guilt or innocence.  The government does not object to the defense cross-examining the witnesses about the reliability of their respective identifications.  But the government moves to preclude any questioning about the identification procedures or arguing that the Transporting Agents did something improper.  This issue has been litigated and decided.

Rule 104 of the Federal Rules of Evidence makes clear that the Court decides "preliminary questions" outside the presence of the jury, including whether evidence is admissible.  To permit the defense to argue that the witness identification procedures were improper or that the post-arrest statements were improperly obtained would flout Rule 104 and would invite a mini trial on whether the evidence in this case was properly obtained—that has already been adjudicated.  Such argument is outside the scope of the actual question for the jury—whether the defendant committed three carjackings, and whether he brandished firearms in connection with the carjackings.  It would also be an improper attempt to appeal to a jury's feelings regarding law enforcement investigations, and inconsistent with typical jury instructions that advise a jury that all evidence before them has been lawfully obtained.  See, e.g., Jury Instructions, United States v. Pikus, No. 16-CR-329 (AMD), 2019 WL 8113500 (E.D.N.Y. Nov. 15, 2019) ("[A]ny evidence

that was presented to you was obtained legally and you can consider it."); Jury Instructions, United States v. Pikus, 13-CR-315 (KAM), 2019 WL 8113500 (E.D.N.Y. July 7, 2015) (same). Accordingly, the defendant should be precluded from arguing or otherwise asserting that the NYPD's identification procedures were somehow improper or unduly suggestive or that the Transporting Agents did something wrong to elicit the defendant's post-arrest statements.

II.   Any Alleged Motive for Investigating and Arresting the Defendant Is Irrelevant

The Second Circuit has explained that:

> The Supreme Court has observed that a selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution.  Because it involves a defect in the institution of the prosecution, the selective prosecution defense is an issue for the court rather than the jury.

United States v. Regan, 103 F.3d 1072, 1082 (2d Cir. 1997) (internal quotation marks omitted) (citing United States v. Armstrong, 517 U.S. 456, 463 (1996)).  Any claim alleging a defect in instituting the prosecution based on alleged governmental motives must be raised with the Court in advance of trial.  Fed. R. Crim. P. 12(b)(3)(A); United States v. Farhane, 634 F.3d 127, 167 (2d Cir. 2011).  Because the government's alleged motive in bringing charges against a defendant is irrelevant to guilt, by asking the jury to focus on this, the defense would be encouraging the jury to decide the case based on something other than the elements of the charged crimes.  That is impermissible.  See, e.g., United States v. Rosado, 728 F.2d 89, 93 (2d Cir. 1984) (arguments about selective prosecution "invited jury nullification by questioning the Government's motives in subpoenaing appellants and prosecuting them for contempt").  Courts therefore regularly preclude criminal defendants from presenting such arguments to the jury in the opening and summation, as well as in cross examinations of the government's witnesses.  See, e.g., Farhane, 634 F.3d at 167; United States v. Stewart, No. 03-CR-717 (MGC), 2004 WL 113506, at *1

(S.D.N.Y. Jan. 26, 2004).  The Court should preclude any such line of argument or defense in this case.

III.     The Court Should Preclude Evidence and Argument Concerning the Defendant's Possible Punishment

The Court should preclude evidence regarding possible consequences a defendant may face if convicted because it is not relevant.  See Fed. R. Evid. 401.  The defendant's punishment is not "facts of consequence" to be determined at trial.  United States v. Blume, 967 F.2d 45, 49 (2d Cir. 1992) ("Federal courts usually instruct juries not to consider a verdict's consequences."); Edwards, 631 F.2d at 1051.  Therefore, any evidence of those issues is not relevant.  See Shannon v. United States, 512 U.S. 573, 579 (1994) ("Information regarding the consequences of a verdict is . . . irrelevant to the jury's task.").  Indeed, jurors are routinely instructed not to consider a defendant's punishment in determining a defendant's guilt.  See generally Sand et al., Modern Federal Jury Instructions, Instruction 9-1 (2017 ed.); see also Shannon, 512 U.S. at 579 (a jury "should be admonished to reach its verdict without regard to what sentence might be imposed [and] not to consider the consequences of their verdicts . . . ." (internal citation omitted)).

The defendant faces a potentially significant sentence should he be convicted. While the defendant has not suggested he intends to introduce any discussion of these facts at trial, out of an abundance of caution, the government moves to preclude at trial any discussion of the defendant's possible punishments or collateral consequences of conviction.  Such evidence is not only irrelevant, but "invites [jurors] to ponder matters that are not within their province, distracts them from their factfinding responsibilities, and creates a strong possibility of confusion." Shannon, 512 U.S. at 579.

IV.     Statements Made by the Defendant Are Admissible by the Government for Their Truth, but Are Inadmissible Hearsay When Offered by the Defendant

Statements made by the defendant that are relevant to his crimes are admissible and not hearsay if "offered against an opposing party and . . . made by the party in an individual or representative capacity."  Fed. R. Evid. 801(d)(2)(A).  By contrast, a defendant is generally prohibited from introducing his own out-of-court statements at trial.  See United States v. Marin, 669 F.2d 73, 84 (2d Cir. 1982) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible.").  A defendant may not elicit his own statements as an "attempt to get [his] side of the . . . story in front of the jury without him[self] testifying and opening him[self] up to cross-examination."  United States v. Davidson, 308 F. Supp. 2d 461, 480 (S.D.N.Y. 2004).

Accordingly, the government respectfully requests that the Court admit the defendant's statements offered by the government and preclude any separate attempts by the defendant to elicit his own out-of-court statements unless he testifies and offers an appropriate basis for admission of such statements.  Specifically, the government expects to elicit statements that the defendant made to victims (e.g., "Give me your phone and keys do not look back, I'll shoot you"), other government witnesses (e.g., text messages with ████████████████████ ████████████████ ), and law enforcement (e.g., statements that he knew he was a fugitive as further described infra).

V.     The Court Should Admit Evidence of the Defendant's Flight from Law Enforcement Authorities as Evidence of His Consciousness of Guilt

At trial, the government intends to introduce evidence of the defendant's flight and attempts to evade capture by law enforcement authorities, including fleeing a crime scene, giving a fake name upon his arrest in Albany, New York, and post-arrest statements he made about knowing he was a fugitive.

As discussed above, on or about November 16, 2020, as police tried to stop the defendant driving the BMW that he had carjacked the previous day, the defendant got into a car accident, striking a pedestrian and two cars, and then fled the scene.  A fugitive for approximately eight months—during which time he was charged by indictment in the E.D.N.Y.—the defendant was later arrested in Albany for criminal trespassing and for giving the Albany police a fake name—Dennis McRae—at the time of his arrest.  The defendant was arraigned in N.D.N.Y. on or about July 29, 2021.  See ECF No. 67-3 (Declaration of Detective Angelo Tessitore) ¶ 3.  Caille was ordered remanded and removed to E.D.N.Y.  Id. ¶ 4.  During his transport to E.D.N.Y., Caille, made several statements that he knew he was a fugitive.  Id. ¶ 6.  In addition, Caille also asked whether it was true that no one could be brought back (removed) from Las Vegas because he was told that if he went there, he could not be brought back to E.D.N.Y.  See id.  On December 5, 2022, the Court denied Caille's motion for a hearing or to suppress these statements.  Dec. 5, 2022 Transcript at 33:19-21.

A.     Applicable Law

The Second Circuit has repeatedly held that "[f]light evidence is admissible to show consciousness of guilt."  United States v. Triumph, 266 F. App'x 53, 55 (2d Cir. 2008); see also United States v. Steele, 390 F. App'x 6, 12 (2d Cir. 2010) (noting that it is "today universally conceded that the fact of an accused's flight, escape from custody, resistance to arrest, concealment, assumption of a false name, and related conduct, are admissible as evidence of consciousness of guilt, and thus guilt itself"); United States v. Al-Sadawi, 432 F. 3d 419, 424 (2d Cir. 2005) ("Flight is an admission by conduct.").  Thus, "[t]he government may introduce evidence of flight to demonstrate consciousness of guilt if a series of inferences can be drawn 'from which the jury can infer consciousness of guilt from flight.'"  United States v. Diallo, 461 F. App'x 27, 30 (2d Cir. 2012) (quoting Al-Sadawi, 432 F. 3d at 424)); see also Steele, 390 F.

App'x at 11 ("While it is well-settled that flight can, in some circumstances, evidence consciousness of guilt, a satisfactory factual predicate must exist before such evidence may properly be admitted.").  In <u>Al-Sadawi</u>, the Second Circuit held that the admissibility of flight evidence depends upon the degree of confidence with which a court can draw four inferences: "(1) from the defendant's behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged."  432 F.3d at 424.

      B.    <u>Discussion</u>

Here, the government anticipates that the evidence at trial will support each of these four inferences that favor the admissibility of flight evidence.  <u>First</u>, the government's anticipated evidence will establish that the defendant's behavior constituted flight from law enforcement authorities.  The defendant in fact ran from law enforcement—causing a car accident and fleeing the scene of the accident on foot.  In addition to knowing that he was wanted because he fled a car that he had stolen, the defendant had another reason to know that he was wanted: his co-defendants were arrested in November 2020 and although his name was redacted, the indictment was unsealed in January 2021.  Someone familiar with the facts—like the defendant—would know that he was the remaining redacted name.  Later, he gave law enforcement officers in Albany a fake name.  Finally, the defendant made several spontaneous statements indicating that he knew he was a fugitive.

<u>Second</u>, the government's anticipated evidence will link the defendant's flight from law enforcement authorities to his consciousness of guilt.  The evidence will show that on or about November 16, 2020, the defendant was driving the BMW that he had carjacked the day before.

He then struck a pedestrian and crashed the BMW.  Upon crashing the BMW, he immediately fled by foot, ██████████████████████████████████  Because the defendant was fleeing in the BMW he had stolen, this supports that he knew he was guilty of a crime.

Third, the government's anticipated evidence will link the defendant's consciousness of guilt to his consciousness of guilt concerning the crimes charged, because the defendant's flight from law enforcement occurred when he was in the BMW.  While being transported to E.D.N.Y. for arraignment in the instant matter, the defendant told law enforcement he knew he was a fugitive.  He also asked whether it was true that if he went to Las Vegas, he could not be brought back to E.D.N.Y., meaning he would not be held responsible for his crimes.

Fourth, the government should be permitted to argue to the jury that the defendant's consciousness of guilt concerning the crimes charged in the instant case is probative of his actual guilt of the crimes charged.  The defendant, as a participant in the crimes charged, undoubtedly has personal knowledge of his guilt or innocence, and his state of mind is clearly relevant.  See, e.g., United States v. Schlussel, No. 08-CR-694, 2009 WL 413605, at *3 (S.D.N.Y. Feb. 11, 2009) (admitting evidence of consciousness of guilt as probative of actual guilt.)

The Second Circuit has previously upheld the admission of evidence concerning flight from law enforcement authorities in circumstances where the evidence supporting the aforementioned inferences was less substantial than the instant case.  In Diallo, the government established that the defendant requested a travel visa to Sierra Leone after his attorney discussed the charges with government agents but did not introduce any direct evidence that the defendant's intent was to flee from law enforcement authorities or that his flight concerned the specific charges at issue.  461 F. App'x at 30.  The Second Circuit nonetheless held that the district court properly admitted the evidence of the defendant's flight.  Id. at 30-31.

11

Similarly, in Steele, the Second Circuit upheld the admission of evidence of the defendant's flight from law enforcement officers who attempted to arrest him at his apartment, despite the government producing no direct evidence tying this flight to the defendant's consciousness of guilt concerning the crime charged.  390 F. App'x at 11-12.  Although the defendant proffered an alternative explanation for his flight, namely that he had missed a recent appointment with his parole officer, the Second Circuit held that, "[w]here the evidence passes the threshold inquiry of relevance, the accepted technique is for the judge to receive the evidence and permit the defendant to bring in evidence in denial or explanation." Id. at 12.  Thus, the Second Circuit held, "the evidence was properly admitted." Id.  Here, the government's anticipated evidence at trial, which will include the defendant's own statements to law enforcement agents, as well as witness testimony, amply support the four inferences set forth in Al-Sadawi.  Additionally, the probative value of this evidence is not "substantially outweighed" by any prejudicial effect and thus passes the balancing test under Federal Rule of Evidence 403.  The Court should permit the government to introduce such evidence at trial.

VI.    The Court Should Admit Evidence of the Defendant's Address

The Court should allow the government to admit evidence of the defendant's arrests through a witness for the purpose of introducing his "pedigree" information, specifically his address, as it relates to the government's proof of his participation in the August 28, 2020 carjacking in Count Two of the Superseding Indictment.  On or about August 28, 2020, John Doe #1's Apple iPhone was stolen during the carjacking of his Infiniti.  Apple subpoena returns reflect that, on the same day, after the carjacking, the iPhone belonging to John Doe #1 was re-registered to a new name and address.  The new name and address were Jean Roby at 1740 Flatbush Avenue in Brooklyn, New York (the "Caille Address").  Apple subpoena returns for jeanrobyfre@gmail.com list two subscriber names: Jean Roby at the Caille Address and

Dieuverson Caille at 872a Flatbush Avenue (another address associated with the defendant based on NYPD records).  NYPD records from on or about April 19, 2017 (the "2017 NYPD Records") reflect that when the defendant was arrested on that date, he reported his home address as the Caille Address.[3]  Similarly, the defendant provided law enforcement authorities with the Caille Address when he was arrested by Albany state police on or about July 27, 2021 (the "2021 Albany Records").

    A.    Applicable Law

        Statements regarding a defendant's pedigree (i.e., routine booking) do not implicate the requirements of Miranda v. Arizona, 384 U.S. 436, 467-68 (1966).  See Pennsylvania v. Muniz, 496 U.S. 582, 601-02 (1990); United States v. Davis, 687 F. App'x. 75, 78 (2d Cir. 2017) (summary order) (rejecting a challenge to the admission of pedigree information and holding that pedigree information "is not protected by Miranda."); see also United States v. Rodriguez, 356 F.3d 254, 259 n.2 (2d Cir. 2004) ("Routine questions about a suspect's identity and marital status . . . do not pose the dangers Miranda was designed to check; they are rather the sort of questions normally attendant to arrest and custody.") (internal quotation marks omitted).  Such pedigree information includes "the arrestee's name, aliases, date of birth, address, place of employment, and marital status."  United States v. Chandler, 164 F. Supp. 3d 368, 387 (E.D.N.Y. 2016). Whether the pedigree information gathered turns out to be incriminating in some respect does not, by itself, alter the general rule that questions related to pedigree information do not fall under the strictures of Miranda. See United States v. Durand, 858 F. App'x 452 (2d Cir. 2021) (affirming the district court's holding that the "pedigree exception" applied where the defendant provided his

---

[3] ███████████████████████████████████████████████████

cell phone number to postal inspectors during the booking process which ultimately linked him to stolen credit cards); United States v. Gotchis, 803 F.2d 74, 79 (2d Cir. 1986) (affirming admission of defendant's response to a pedigree question, even though the response helped establish defendant's intent to commit the crime with which he was charged); United States ex rel. Hines v. LaVallee, 521 F.2d 1109, 1112 (2d Cir. 1975) (affirming admission of defendant's response to a pedigree question, even though the response helped establish the identity of defendant as the rapist in question).

B.    Discussion

Here, the Caille Address included as part of the defendant's arrest records for both the 2017 NYPD Records and the 2021 Albany Records both fall within the "pedigree exception," not covered by the protections of Miranda.  See United States v. Durand, 467 F. Supp. 3d 66, 71 (E.D.N.Y. 2020), aff'd, 858 F. App'x 452 (2d Cir. 2021) ("As is now well settled, Miranda warnings are not required for questions seeking pedigree information incident to an arrest during a non-investigative booking process.");  Rosa v. McCray, 396 F.3d 210, 214, 221-22 (2d Cir. 2005) (explaining that "[t]he collection of biographical or pedigree information through a law enforcement officer's questions during the non-investigative booking process that typically follows a suspect's arrest, however, does not ordinarily implicate the prophylactic protections of Miranda").  The Caille Address is exactly the type of "pedigree" information that is admissible at trial.  The Caille Address is an important piece of the government's evidence of the defendant's participation in the August 28, 2020 carjacking, and is admissible under Federal Rules of Evidence 401 and 402 as relevant evidence to further prove his involvement in the crime.  The Caille Address corroborates the defendant's participation in the August 28, 2020 carjacking by demonstrating that John Doe #1's stolen Apple iPhone was re-registered to an Apple account which listed a fictious

name and the defendant's home, the Caille Address, which is relevant evidence to be adduced at trial.

Accordingly, the Court should permit the introduction of evidence of the Caille Address.

VII.    Any "Alternative Perpetrator" Argument Must Be Supported by Evidence Establishing a Sufficient Nexus to the Charged Crimes

The government moves to preclude the defendant from introducing evidence or eliciting testimony in support of speculative theories of an alternative perpetrator unless the defendant first establishes a sufficient nexus to the charged crimes.

A.    Applicable Law

A criminal defendant may not introduce evidence tending to show that another person committed the charged crime unless the evidence "sufficiently connects the other person to the crime." United States v. Hendricks, 921 F.3d 320, 331 (2d Cir. 2019) (quoting United States v. White, 692 F.3d 235, 246 (2d Cir. 2012)). Although a defendant "has a right to attempt to establish his innocence by showing that someone else did the crime, a defendant must still show that his proffered evidence on the alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the asserted alternative perpetrator." Wade v. Mantello, 333 F.3d 51, 61-62 (2d Cir. 2003) (quoting United States v. McVeigh, 153 F.3d 1166, 1191 (10th Cir. 1998)). It is not sufficient for a defendant to offer up "unsupported speculation that another person may have done the crime." Id. at 62. Courts require that defendants show a sufficient connection to the charged crime because "[t]he potential for speculation into theories of third-party culpability to open the door to tangential testimony raises serious concerns." Id. at 61. As explained by the Tenth Circuit in McVeigh and applied by the Second Circuit in Wade, courts "must be sensitive to the special problems presented by

alternative perpetrator evidence" when balancing probative value and adverse dangers of its presentation to the jury.  Id. (quoting McVeigh, 153 F.3d at 1191).  Specifically, "speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice."  Id. at 62.

Even if the defendant can show that an alternative perpetrator may have had motive and opportunity to commit the crime charged, a nexus does not exist without evidence connecting that alternative perpetrator to the specific crime in question.  Id. at 60-61 (citing Dibenedetto v. Hall, 272 F.3d 1, 8 (1st Cir. 2001) ("Evidence that tends to prove a person other than the defendant committed a crime is relevant, but there must be evidence that there is a connection between the other perpetrators and the crime, not mere speculation on the part of the defendant.")) (motive is insufficient on its own); see also Willcock v. Martuscello, No. 17-CV-454 (KAM), 2020 WL 2748031, at *3 (E.D.N.Y. May 27, 2020) (noting that the trial court disallowed evidence that the defendant's twin brother had committed past stabbings because, "in order to introduce evidence of an unrelated stabbing to prove the existence of an alternative perpetrator, the modus operandi must be so unique as to conclude the same person did it"); cf. United States v. Serrano, 192 F. Supp. 3d 407 n.2 (S.D.N.Y. 2016) (allowing alternative perpetrator evidence where third-party had made self-inculpatory statements which were corroborated by evidence admitted by the government).

In Hendricks, the Second Circuit held that a defendant had failed to show the required nexus to present evidence that his co-defendant had committed the charged crime with the assistance of an individual named Jamar Sesum, also known as "Bam."  921 F.3d at 325, 331. At trial for a bank robbery conducted by four men, the defendant sought to offer evidence that Bam (not the defendant) was involved in the robbery, and sought to elicit the following facts: (1) Bam was a close friend of the co-defendant; (2) Bam better fit the physical description provided

by an eyewitness ("two kids") than the defendant who was 55 years old; (3) Bam and the codefendant exchanged telephone calls before and after the robbery in question; and (4) Bam and the co-defendant went shopping for sneakers after the robbery.  Id.  The Hendricks court found the defendant's proposed evidence failed to create a sufficient nexus because it tended to prove only that Bam, the alternative perpetrator, was aware of the robbery, not that he himself had participated in it rather than the defendant.  Id.

  B. <u>Discussion</u>

   To the extent the defendant seeks to proffer credible evidence of an alternative perpetrator, the government respectfully asks the Court to decide its admissibility in a pretrial hearing.   The Second Circuit has explained that the purpose of requiring a sufficient nexus before offering alternative perpetrator evidence is to respond to the "grave risk of jury confusion" posed by such evidence.   <u>Wade</u>, 333 F.3d at 61-62 (quoting <u>McVeigh</u>, 153 F.3d at 1191).  Allowing a defendant to present a speculative theory of an alternative perpetrator may result in jurors becoming distracted by irrelevant testimony, "turning attention away from issues of [the defendant's] culpability to those of [the victims] character," and issuing a verdict based on emotion or prejudice.  Id.   Additionally, the interest of judicial efficiency is better served by deciding the issue prior to the empanelment of the jury.   Leaving the issue open may later result in a lengthy "trial within a trial" to determine whether the defendant can demonstrate the required nexus.   Pretrial determination eliminates the risk that jurors will be exposed to speculative testimony and precludes the need to "unring the bell" during the trial itself.

VIII. <u>The Court Should Admit Evidence of a September 3, 2020 Carjacking that the Defendant Committed with Moses Fall During the Conspiracy</u>

   The government moves to admit evidence that the defendant, together with Fall, committed another carjacking on or about September 3, 2020.   Specifically, the government

expects to elicit testimony ███████████████████████████   In addition,

DNA linked to the defendant was a match to a water bottle recovered from inside the stolen car.

The evidence the government seeks to admit is direct evidence of the conspiracy—which is alleged

to have taken place between on or about August 24, 2020 through June 20, 2021.  To the extent

any of the proffered evidence does not fit direct evidence, the evidence is nonetheless offered for

a proper non-propensity purpose under Rule 404(b), i.e., to show the criminal nature of the

relationship between the defendants, to establish motive, opportunity, intent, preparation, plan, and

knowledge with regard to the specific conduct comprising the charged crime.  Finally, the

probative value of this evidence identified above is not "substantially outweighed" by any

prejudicial effect and thus passes the balancing test under Federal Rule of Evidence 403.

A.    Applicable Law

Evidence of uncharged crimes and other acts may be admitted pursuant to

Rule 404(b) for numerous permissible purposes, including to prove motive, opportunity, intent,

preparation, plan, knowledge, identity, or absence of mistake or accident.  Fed.  R. Evid. 404(b)(2).

See United States v. Ortiz, 857 F.2d 900, 903 (2d Cir. 1988).  The Second Circuit has emphasized

that Rule 404(b) is a rule of broad reach and liberal application and applies an "inclusionary

approach" to admitting "other acts" evidence under Rule 404(b).  See United States v. Garcia, 291

F.3d 127, 136 (2d Cir. 2002) (citing United States v. Pitre, 960 F.2d 1112, 1118 (2d Cir. 1992));

see also United States v. Levy, 731 F.2d 997, 1002 (2d Cir. 1984) ("We have adopted the

inclusionary or positive approach to [404(b)]; as long as the evidence is not offered to prove

propensity, it is admissible.").  A party must satisfy three requirements for evidence of "other

crimes, wrongs or acts" to be admitted under Rule 404(b).  First, the evidence must be offered for

a purpose other than to prove the defendant's bad character or criminal propensity.  See United

States v. Mickens, 926 F.2d 1323, 1328 (2d Cir. 1991) (citing United States v. Colon, 880 F.2d

650, 656 (2d Cir. 1989)).  Such permissible purposes include to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  Fed. R. Evid. 404(b)(2). Second, the evidence must be relevant under Rules 401 and 402 and more probative than prejudicial in accordance with Rule 403.  See Mickens, 926 F.2d at 1328 (citing Ortiz, 857 F.2d at 903); Levy, 731 F.2d at 1002.  Third, if the defendant requests that the jury be instructed as to the limited purpose for which the government's evidence is being admitted, the court must furnish such an instruction.  See Mickens, 926 F.2d at 1328-29; Levy, 731 F.2d at 1002.

B.    Discussion

Count One charges the defendant with committing a carjacking Conspiracy between on or about August 24, 2020 and June 20, 2021.  The September 3, 2020 carjacking falls squarely within this time period.  To the extent that the Court does not consider this direct evidence, it is admissible under Rule 404(b) to prove motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.  Fed. R. Evid. 404(b)(2).  Finally, the evidence is not "substantially outweighed" by any prejudicial effect given that it is the same type of conduct, carjacking and thus passes the balancing test under Federal Rule of Evidence 403 given its probative value in proving the carjacking conspiracy.  Accordingly, the Court should permit the government to introduce this evidence.

IX.    Should the Defendant Argue that the June 20, 2021 Porsche Carjacking (Counts Six and Seven) Involved Someone Else's Fingerprints, the Court Should Permit the Government to Introduce Evidence that the Fingerprints Belong to an Associate Who Committed Another Crime with the Defendant

According to NYPD records, in addition to the defendant's fingerprints being found on the stolen vehicle, fingerprints belonging to an individual named ███████ were also found on the Porsche that was carjacked at gunpoint (Counts Six and Seven).  If the defendant elicits testimony that other fingerprints were found on the car, that those fingerprints belong to ██, or

argues that ▆ committed the carjacking, the government should be permitted to introduce evidence that the defendant and Paul were arrested for committing a crime together. ▆

▆

▆

### A.   Applicable Law

As stated, supra, evidence is admissible if it has a tendency to make a fact more or less probable, and that fact is of consequence to the action. See Fed. R. Evid. 401, 402. The court may exclude evidence whose probative value is substantially outweighed by a danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or because it is cumulative. Fed R. Evid. 403. If a defendant "opens the door" the government's rebuttal evidence can include otherwise inadmissible evidence. See, e.g., Castro v. Sullivan, 662 F. Supp. 745, 748 (S.D.N.Y. 1987); United States v. Curry, 358 F.2d 904, 910 (2d Cir. 1965), cert. denied, 385 U.S. 873 (1966) (government may use defendant's statement to law enforcement officials on rebuttal, even where statement would be inadmissible as direct evidence), cert. denied, 375 U.S. 940 (1963) (government may introduce evidence of defendant's prior narcotics convictions only to rebut defendant's denial of any prior criminal record).

### B.   Discussion

Here, if the defendant argues that someone else's fingerprints were on the Porsche (in addition to the defendant's), the government should be permitted to rebut that argument with evidence that the fingerprints were a match to ▆, and that ▆

---

4 ▆



The defendant will have opened the door to allow the government to introduce this evidence.  See Curry,  358 F.2d at 910.

X.

21







CONCLUSION

For the foregoing reasons, the government respectfully requests that the Court grant the government's motions in limine.

Respectfully submitted,

BREON PEACE
United States Attorney

By:    /s/
Ellen H. Sise
Antoinette N. Rangel
Assistant U.S. Attorneys
(718) 254-7000

cc:    Clerk of Court (PKC) (by ECF)
Kelley Sharkey, Esq. (by ECF)
John Michael Burke, Esq. (by ECF)
Adam Bolotin, Esq. (by ECF)